| BERNARD N. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM
AND RECOMMENDATION**

In this action, plaintiff Bernard N. Williams ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the parties' motions for judgment on the pleadings. (D.E. 22, 26). Both filed memoranda in support of their respective motions. (D.E. 23, 27). The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 28). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## BACKGROUND

### I.    CASE HISTORY

Plaintiff filed an application for DIB on 24 January 2012 and an application for SSI on 23 January 2012. Transcript of Proceedings ("Tr.") 10. In both, he asserted a disability onset date of 28 December 2009. Tr. 10. But he had previously filed DIB and SSI claims asserting the same disability onset date that were denied by an ALJ in a decision dated 8 December 2011 (Tr. 81-88). Tr. 10. Plaintiff did not appeal the denial and is therefore barred from relitigating his claims for the period through the ALJ's denial. *See* Tr. 10-11. The alleged period of disability in this appeal therefore begins the day after the prior denial, 9 December 2011, not 28 December 2009, as he states in the instant applications. *See* Tr. 11. The date 9 December 2011 is therefore referred to herein as the alleged onset date of disability.

These applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 10. On 5 September 2013, a video hearing was held before an administrative law judge ("ALJ"), at which plaintiff and a vocational expert testified. Tr. 24-48. The ALJ issued a decision denying plaintiff's claim on 6 December 2013. Tr. 10-19. Plaintiff requested review by the Appeals Council.[2] On 9 January 2015, the Appeals Council denied the request for review. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 4 March 2015, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Am. IFP Mot. (D.E. 4); Order Allowing Am. IFP Mot. (D.E. 5); Compl. (D.E. 6)).

---

[2] A copy of the request for review does not appear to be included in the record. Its omission is immaterial to this appeal.

## II.  STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the regulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because [his] impairments match a

3

listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect [his] ability to work. [20 C.F.R.] § 416.945(a)(1).[3] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[4]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because [he] is able to perform [his] past work. Or, if the exertion required for the claimant's past work exceeds [his] [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[5] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

## III. ALJ'S FINDINGS

Plaintiff was 46 years old on the alleged onset date of disability (9 December 2011) and 47 years old on the date of the hearing. *See, e.g.*, Tr. 17 ¶ 7; 29. The ALJ found that plaintiff has at least a high school education (Tr. 17 ¶ 8) and past relevant work as a pipefitter, industrial truck operator, dry food products mixer, and department manager (Tr. 17 ¶ 6).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the

---

[3] *See also* 20 C.F.R. § 404.1545(a)(1).

[4] *See also* 20 C.F.R. § 404.1545(a)(2).

[5] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

alleged onset date of disability. Tr. 12 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: residuals from a patella tendon rupture of the right knee requiring surgical repair; osteoarthritis of the right knee; and obesity. Tr. 13 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the listings. Tr. 13 ¶ 4.

The ALJ next determined that plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1527(a) and 416.927(a),[6] with postural and mental restrictions as follows:

> The claimant can sit for up to six hours in an eight-hour day and he can stand and walk for up to two hours in an eight-hour day. He has to adjust his position every 30 minutes (i.e. a "sit/stand option"). He would need to elevate his legs and this can be done during regularly scheduled breaks. He can lift 10 pounds occasionally and he can frequently lift and carry articles like docket files, ledgers, and small tools. Due to his pain, he can only understand, remember and carry out simple instructions and sustain attention for simple tasks.

Tr. 13-14 ¶ 5.

Based on her determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 17 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of surveillance-system monitor, call-out operator, and order clerk. Tr. 18 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 9 December 2011, through the date of her decision, 6 December 2013. Tr. 19 ¶ 11.

---

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Sedentary Work," 1991 WL 688702. "Sedentary work" and the other terms for exertional level used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible

6

without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## **OVERVIEW OF PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ's decision should be reversed and DIB and SSI awarded or, alternatively, that this case be remanded for a new hearing on the principal grounds that the ALJ erroneously failed to: (1) find that plaintiff did not meet or medically equal Listings 1.02 and 14.09; (2) adequately address the effects of his obesity; (3) properly assess medical opinion evidence; and (4) find that he lacked the RFC to perform even sedentary work. Each ground is discussed in turn below.

## **DISCUSSION**

## **I. ALJ'S DETERMINATION ON LISTINGS**

### **A. Listings Generally**

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 (setting out listings). Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. Ruling 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F. 2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5),

416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a) (medical findings must be at least equal in severity and duration to the listed criteria), 416.926(a) (same). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" *Jones ex rel. B.J. v. Astrue*, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. 16 Apr. 2012) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)), *rep. & recomm. adopted by* Order (22 May 2012) (D.E. 19); *Money v. Astrue*, No. 1:08cv895, 2011 WL 3841972, at *8 (M.D.N.C. 26 Aug. 2011) ("The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment." (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989))); *cf. Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted)).

## B. Listing 1.02

Plaintiff challenges the ALJ's determination regarding Listing 1.02. It provides:

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate

medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

Listing 1.02.

The inability to ambulate effectively refers to "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities" and "is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a handheld assistive device(s) that limits the functioning of both upper extremities." Listing 1.00B2b(1). Examples of ineffective ambulation "include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.* (2).

In her decision, the ALJ ruled that plaintiff's "osteoarthritis in the knee has not resulted in an inability to ambulate effectively as required for this condition to meet Listing 1.02A." Tr. 13 ¶ 4. While stating her determination in terms of plaintiff not meeting Listing 1.02A, it is apparent that she also determined that plaintiff's impairments do not medically equal Listing 1.02A in light of her more general determination that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the [listings]." Tr. 13 ¶ 4.

9

The ALJ did not specifically address the Paragraph B criteria of Listing 1.02, but her implicit determination that plaintiff did not meet or medically equal them does not appear to be in dispute. As noted below, plaintiff cites only symptoms relating to his lower extremities in support of his challenge to the Listing 1.02 determination. In any event, there is scant evidence in the record that plaintiff has any limitation in use of the upper extremities, let alone any limitations reaching listing level severity.

While challenging the ALJ's determination on Listing 1.02A, he fails to explain how he purportedly satisfies the various criteria. Indeed, he does not even set out the criteria. Instead, he simply recites various symptoms he has and related diagnoses, and states that they should be deemed to satisfy Listing 1.02A (as well as Listing 14.09):

> Plaintiff suffers from chronic bilateral knee pain and weakness, osteoarthrosis, genu verum deformity, residuals from a patella tendon rupture requiring surgical repair, decreased range of motion, marked crepitation, antalgic/limping gait, swelling/warmth in the knees, sprain/strain of the knee, arthralgias, chronic joint pain, and osteoarthritis. Plaintiff's bilateral knee pain has been objectively documented multiple times in that he has been noted to experience decreased range of motion, tenderness, swelling, and warmth in the knees, and an antalgic/limping gait throughout the record. (T pp. 326-350) This combination of symptoms should result in plaintiff meeting and/or equaling the functional equivalent of the listing.
>
> ALJ Wisz failed to adequately consider the medical evidence in the record in determining that Mr. Williams's impairments did not meet or medically equal Listings 1.02 and 14.09.

Pl.'s Mem. 7.

On their face, the symptoms cited by plaintiff do not establish that he lacked the ability to ambulate effectively. The diagnoses themselves say nothing about the severity of any resulting limitations. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that the diagnosis of a condition, alone, is insufficient to prove disability, because there must also be "a showing of related functional loss"); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)

("The mere diagnosis ... says nothing about the severity of the condition."). Plaintiff does not even assert that he lacks the ability to ambulate effectively.

Substantial evidence supports the ALJ's determination that plaintiff does not lack the ability to ambulate effectively and therefore does not satisfy Listing 1.02A. Such evidence includes his own testimony that he could walk about 30 to 45 minutes, which the ALJ recites in her decision. Tr. 15 ¶ 5 (referencing Tr. 41). He also testified that "sometimes, I've got a little stick or cane I've got through the house I pick [up] and take when I walk up the steps and stuff." Tr. 43 (referenced by the ALJ at Tr. 15 ¶ 5). There was no mention of use of two canes or sticks or a walker, as contemplated by Listing 1.02A, inside the house or otherwise.

Findings by plaintiff's orthopedist, Stephen Lester, M.D., in the course of his treatment of plaintiff, as well as the conservative treatment program Dr. Lester prescribed, also substantiate that plaintiff's leg impairments do not impose limitations of sufficient severity to render him unable to ambulate effectively. The ALJ summarized this treatment course as follows:

> The longitudinal medical record reveals that the claimant injured his right leg in December 2009. He came under the care of Stephen Lester, M.D., of Roanoke Orthopedics. Dr. Lester diagnosed the claimant with a rupture of the patellar tendon. On January 14, 2010, Dr. Lester performed surgical repair of the tendon rupture. Despite surgery, the claimant has had residual loss of motion of the right knee joint. His condition has been exacerbated by development of osteoarthritis in that joint. The claimant has also developed left knee pain (Exhibits B-3F to B-6F).
>
> . . . .
>
> Subsequent examinations by Dr. Lester, through August 2013, have revealed that the claimant has had swelling and warmth in the right knee, but no redness or other signs of inflammation. He had tenderness to palpation of the right knee joint. He was observed to have right knee flexion to 120 degrees and extension to 5 degrees. He had crepitus on motion. He also had tenderness and crepitus in the left knee joint, *but had a full range of motion of that joint. The claimant did not have any joint instability and his muscle strength in both legs was normal, rated 5/5. His reflexes, sensation, and pulses in the legs were also normal. He did not require use of an assistive device* but he was observed to have a limping gait. Dr. Lester has prescribed a home exercise program and *treatment with vicodin, tramadol, ibuprofen, motrin, aleve, and icy hot* (Exhibits B-3F to B-6F).

Tr. 15 ¶ 5 (emphasis added).

A consultative examination of plaintiff by physician E.C. Land, M.D. on 12 April 2012 (Tr. 334-36) provides further evidence supporting the ALJ's determination that plaintiff's leg impairments are not so severe as to deprive him of the ability to ambulate effectively. As summarized by the ALJ, Dr. Land found:

> The claimant reported that he had increasing right knee pain and that he also had left knee pain. On examination, the claimant was observed to have a broad-based gait and to drag his legs. *He did not require use of an assistive device.* He had limitation of motion of the right knee, with flexion possible to 120-130 degrees. *He had full extension of the joint. His muscle strength in the legs was normal, rated 5/5* (Exhibit B-2F).

Tr. 15 ¶ 5 (emphasis added). Dr. Land noted that "[t]he patient's reliability is felt to be good and his efforts were good." Tr. 336.

Plaintiff suggests that the ALJ erred by not including in her determination on Listing 1.02A a discussion of medical evidence, which appeared subsequently in her decision. The fact, though, that her discussion of the medical evidence follows the listing determination does not detract from its relevance to that determination because the ALJ's decision must be read as a whole. *See, e.g.*, *Manning v. Colvin*, No. 4:12–CV–204–D, 2013 WL 2617351, at *6 (collecting cases), *mem. & recomm. adopted by* 2013 WL 2617351, at *1 (E.D.N.C. 11 June 2013); *see also McCauley v. Colvin*, No. 7:12–CV–311–D, 2013 WL 7098724, at *9 (13 Dec. 2013) (finding that the ALJ's determination on Listing 1.04A and B was adequately supported by subsequent RFC analysis) (citing *Jones v. Astrue*, No. 5:07–CV–452–FL, 2009 WL 455414, at *3 (E.D.N.C. 23 Feb. 2009)), *mem. & recomm. adopted by* 2013 WL 7098724, at *1 (E.D.N.C. 28 Jan. 2014)).

The court concludes that the ALJ's determination regarding Listing 1.02 was proper. It accordingly rejects plaintiff's challenge to it.

## C.    **Listing 14.09**

Plaintiff also challenges the ALJ's determination regarding Listing 14.09. It provides:

14.09 Inflammatory arthritis. As described in 14.00D6.[7]  With:
A. Persistent inflammation or persistent deformity of:

1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6); or
2. One or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7).

or

---

[7] Listing 14.00D6 provides in part:

d. Documentation of inflammatory arthritis.    Generally, but not always, the diagnosis of inflammatory arthritis is based on the clinical features and serologic findings described in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

e. How we evaluate inflammatory arthritis under the listings.

(i) Listing-level severity in 14.09A and 14.09C1 is shown by an impairment that results in an "extreme" (very serious) limitation.    In 14.09A, the criterion is satisfied with persistent inflammation or deformity in one major peripheral weight-bearing joint resulting in the inability to ambulate effectively (as defined in 14.00C6) or one major peripheral joint in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7). In 14.09C1, if you have the required ankylosis (fixation) of your cervical or dorsolumbar spine, we will find that you have an extreme limitation in your ability to see in front of you, above you, and to the side.  Therefore, inability to ambulate effectively is implicit in 14.09C1, even though you might not require bilateral upper limb assistance.

(ii) Listing-level severity is shown in 14.09B, 14.09C2, and 14.09D by inflammatory arthritis that involves various combinations of complications of one or more major peripheral joints or other joints, such as inflammation or deformity, extra-articular features, repeated manifestations, and constitutional symptoms or signs.  Extra-articular impairments may also meet listings in other body systems.

(iii) Extra-articular features of inflammatory arthritis may involve any body system; for example: Musculoskeletal (heel enthesopathy), ophthalmologic (iridocyclitis, keratoconjunctivitis sicca, uveitis), pulmonary (pleuritis, pulmonary fibrosis or nodules, restrictive lung disease), cardiovascular (aortic valve insufficiency, arrhythmias, coronary arteritis, myocarditis, pericarditis, Raynaud's phenomenon, systemic vasculitis), renal (amyloidosis of the kidney), hematologic (chronic anemia, thrombocytopenia), neurologic (peripheral neuropathy, radiculopathy, spinal cord or cauda equina compression with sensory and motor loss), mental (cognitive dysfunction, poor memory), and immune system (Felty's syndrome (hypersplenism with compromised immune competence)).

(iv) If both inflammation and chronic deformities are present, we evaluate your impairment under the criteria of any appropriate listing.

Listing 1.02D6d, e.

13

B. Inflammation or deformity in one or more major peripheral joints with:

1. Involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

or

C. Ankylosing spondylitis or other spondyloarthropathies, with:

1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or

2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

or

D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 14.09.

The ALJ did not specifically address Listing 14.09. It is encompassed, though, in her general determination that plaintiff did not satisfy any listings. *See* Tr. 13 ¶ 4.

As noted previously, plaintiff challenges the ALJ's determination on Listing 14.09 on the basis of the same cursory argument he presented in challenging her Listing 1.02 determination. Plaintiff does not specify the criteria of which paragraphs and subparagraphs of Listing 14.09 he

14

claims he satisfies. As with Listing 1.02A, he does not even set out any portion of Listing 14.09 in his memorandum.[8]

Since the symptoms plaintiff cites as satisfying Listing 14.09 relate to his lower extremities, the court will infer that he contends he satisfies Listing 14.09A1 because it requires the inability to ambulate effectively. The ALJ's determination that plaintiff does not suffer from such inability signifies that he does not satisfy Listing 14.09A1, at least in part, on this ground. For the reasons previously discussed, the ALJ's determination that plaintiff does not suffer from the inability to ambulate effectively is proper.

To the extent that plaintiff contends he satisfies Listing 14.09 in some other way, the contention fails. Most obviously, there appears to be no evidence of record that plaintiff suffers from inflammatory arthritis, as the ALJ noted. *See* Tr. 15 ¶ 5 ("Subsequent examinations by Dr. Lester, through August 2013, have revealed that the claimant has had . . . no redness or other signs of inflammation."). Instead, the ALJ found that he had osteoarthritis of the right knee. Osteoarthritis and inflammatory arthritis are distinct conditions. *See, e.g.*, "Osteoarthritis," *Dorland's Illustrated Medical Dictionary* 1344 (32nd ed. 2012) (defining osteoarthritis as "a noninflammatory degenerative joint disease seen mainly in older persons characterized by degeneration of the articular cartilage" and other specified signs). The absence of evidence that plaintiff has inflammatory arthritis precludes him from meeting the diagnostic description of

---

[8] The practice reflected in plaintiff's memorandum in his challenge to the ALJ's determination on Listing 14.09, and to a lesser extent Listing 1.02, of essentially inviting the court to divine arguments he could have made is a noxious and feckless one. It is obviously not the court's role to cobble together a party's contentions. The failure by a party to delineate its arguments can result in summary denial of the relief sought. *See, e.g.*, *Farmer v. United States*, No. 5:12–CV–725–FL, 2013 WL 3873182, at *4 (E.D.N.C. 25 July 2013) (denying motion to dismiss by respondent without prejudice where respondent's supporting memorandum did not present specific arguments to each of the claims and instead "provide[d] vague and elusive references to petitioner's claims and ma[de] conclusory arguments for dismissal"); *Wooton v. CL, LLC*, No. 2:09–CV–34–FL, 2010 WL 3767308, at *9 n.10 (E.D.N.C. 27 Sept. 2010) ("Failure to present specific argument in support of a motion to dismiss can result in a denial of the motion."), *aff'd*, 504 F. App'x 220 (4th Cir. 2013). At its most egregious, this shot-in-the-dark practice could implicate Fed. R. Civ. P. 11(b).

Case 4:15-cv-00036-D   Document 29   Filed 08/02/16   Page 15 of 32

Listing 14.09. It also precludes him from meeting certain severity criteria (*e.g.*, the requirement in Listing 14.09D for "[r]epeated manifestations of inflammatory arthritis"). The ALJ's determination that plaintiff does not have an impairment or combination of impairments that meets this listing is therefore proper.

The record does not compel a determination that plaintiff has any impairment or combination of impairments that is equivalent to inflammatory arthritis. Again, there is a paucity of evidence of any equivalent impairment or combinations of impairments. Plaintiff himself testified that he did not have any medical problems other than his hypertension and knee impairments. Tr. 42. There is similarly a paucity of evidence of equivalence to numerous specific severity criteria. The ALJ therefore did not err in determining that plaintiff does not have an impairment or combination of impairments that medically equals Listing 14.09. For this and the other reasons stated, the court rejects plaintiff's challenge to the ALJ's determination on Listing 14.09.

## II. ALJ'S ASSESSMENT OF PLAINTIFF'S OBESITY

Social Security Ruling 02-1p requires that an ALJ consider the effects of a claimant's obesity on his ability to perform routine movement and necessary physical activity in the workplace and make findings explaining his assessment of such effects. Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *6-7 (12 Sept. 2000). The ALJ must also explain how he reached his conclusions on whether obesity caused any limitations. *Id.* at *7. Plaintiff argues that the ALJ failed to meet these requirements. The contention is meritless.

As indicated, at step two of the sequential analysis, the ALJ expressly found claimant's obesity to be a severe impairment. *See* Tr. 13 ¶ 3. The ALJ thereby determined that it imposed more than a minimal limitation on plaintiff's physical or mental ability to do basic work

activities. *See* Soc. Sec. Ruling 85–28, 1985 WL 56856, at *3 (1 Jan. 1985) (providing that an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered"); *see also* 20 CF.R. §§ 404.1520(c) (providing that an impairment is severe only if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities"), 416.920(c) (same).

The ALJ again addressed plaintiff's obesity at step three of the sequential analysis, as part of her determination on the listings:

> There are no Listing of Impairments criteria for obesity. However, the Administrative Law Judge has considered the effects of this condition at each step in the sequential adjudication process, as is discussed in Social Security Ruling 02-01p. The claimant's obesity definitely has an impact on his functional capacity, which has been considered in assessing his exertional capacity.

Tr. 13 ¶ 4.

In discussing plaintiff's RFC determination, the ALJ recited plaintiff's testimony regarding his weight:

> At the hearing, the claimant testified that he was 6'0" tall. His weight had changed because he had not been able to work. He said that he would sit around all day. He weighed 275 pounds before his surgery and weighed 350 pounds at the time of the hearing.

Tr. 14 ¶ 5 (referencing Tr. 29, 41).

The ALJ also cited the failure of state agency consulting nonexamining physician E. Woods, M.S., M.D. to "take into consideration the impact of the claimant's obesity" as a basis for giving "little weight" to his opinion that plaintiff could perform medium exertional level work with limitations. Tr. 16 ¶ 5 (referencing Tr. 134, 156). Dr. Woods set out this opinion in his 18 April 2012 physical RFC assessments of plaintiff (Tr. 133-36, 155-58).

17

The ALJ's RFC determination includes limitations responsive to obesity. These include restriction of plaintiff to sedentary work; sitting and walking for up to only 2 hours in an 8-hour workday; the need to alternate sitting and standing every 30 minutes; and the need to elevate his legs on regular breaks. *See* Tr. 13-14 ¶ 5. Social Security Ruling 02-1p substantiates that limitations such as these may be the consequence of obesity. *See* Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *6.

At step four, the ALJ found plaintiff unable to perform his past relevant work, in part, because the exertional level of such work, ranging from medium to very heavy, exceeded the sedentary level to which the ALJ found plaintiff presently limited partly due to his obesity. Tr. 17 ¶ 6. At step five, the foregoing obesity-responsive limitations again came into play. The ALJ included them in the hypothetical she provided the vocational expert and on the basis of whose testimony in response the ALJ determined that there were jobs in significant numbers in the national economy that plaintiff could perform. *See* 18 ¶ 10; Tr. 45-46.

The court concludes that the ALJ did adequately consider the potential effects of claimant's obesity on his ability to perform work-related activities throughout the sequential analysis. The court accordingly rejects plaintiff's challenge to the ALJ's handling of his obesity.

## III. ALJ'S EVALUATION OF MEDICAL OPINION EVIDENCE

### A. Applicable Legal Standards

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a

18

case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. § 404.1527(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted by* 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See*, *e.g.*, *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all

evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

## B. Analysis

In the report on his examination of plaintiff on 12 April 2012, consulting physician Dr. Land expressed various medical opinions regarding plaintiff. Plaintiff's treating orthopedist Dr. Lester completed a medical source statement dated 12 March 2012. The ALJ gave "great weight" to the opinions of Dr. Land, but "little weight" to the opinions of Dr. Lester. Tr. 16 ¶ 5. Plaintiff argues that the ALJ erred in two principal respects: she should have given controlling weight to the opinions of Dr. Lester as a treating physician; and she should have given less weight to the opinions of Dr. Land as a nontreating examining physician than to the opinions of Dr. Lester. The court finds no error.

The ALJ summarized the opinions of Dr. Lester and Dr. Land, and discussed the weight she gave them as follows:

> The claimant's treating physician, Dr. Lester, has provided a medical source statement, dated March 12, 2012, indicating that the claimant is unable to perform the exertional demands of even sedentary work, that he has additional postural, manipulative, and environmental restrictions, and that he is unable to perform any work on a full-time basis (Exhibit B-1F). The Administrative Law Judge notes that the opinion of a treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence (*Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987)).[9] However, in this instance, Dr. Lester has only treated the claimant for his knee condition. There is no indication in his treatment

---

[9] This so-called "treating physician rule" was superseded by the controlling weight rule adopted in 1991 in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). *See, e.g., Stroup v. Apfel*, 205 F.3d 1334, at *5 (4th Cir. 2000) (unpublished table decision) (per curiam) (quoting the statement of the treating physician rule in *Coffman* and holding that "[t]he 1991 regulations supersede the 'treating physician rule' from our prior case law"); *Hammett v. Colvin*, Civ. Act. No. BPG-12-3202, 2013 WL 4026968, at *2 n.2 (D. Md. 6 Aug. 2013); *Mecimore v. Astrue*, Civ. No. 5:10CV64-RLV-DSC, 2010 WL 7281096, at *3 (W.D.N.C. 10 Dec. 2010). Neither party contends that the ALJ erred in applying the treating physician rule. It cannot reasonably be said that the ALJ's assessment of Dr. Lester's opinions would have been materially different had she applied the controlling evidence rule. Any error in the ALJ's application of the treating physician rule was harmless. *See, e.g., Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

records that the claimant has any restrictions in his ability to use his hands. Additionally, there is contradictory evidence from Dr. Land, an examining source. He found that the claimant could use his hands and that was supported by demonstration during his examination of the claimant. Dr. Lester has also restricted the claimant to less than a full eight-hour workday. There is no reason to believe that the claimant's stamina has been impacted to that degree. A review of Dr. Lester's treatment notes shows limited findings during the claimant's office visits. He prescribed tramadol on one visit due to increased pain. He prescribed nothing on another visit. He later prescribed ibuprofen 800. This level of pain medication management would not indicate a person who is restricted as Dr. Lester has described the claimant in Exhibit B-1F. Therefore, little weight is given to his opinion.

Dr. Land has provided an examining source statement indicating that the claimant would be severely restricted in his ability to squat, stoop, climb, and balance (Exhibits B-2F). Since this assessment was based on the consultant's own clinical examination of the claimant, the Administrative Law Judge gives great weight to this opinion. The limitations articulated here have been incorporated in the [RFC] assessment. Such postural activities would not be required at the sedentary exertional level.

Tr. 16 ¶ 5.

As the ALJ's analysis substantiates, she was not required to accord controlling weight to Dr. Lester's opinions and did not err in assigning them little weight. His opinions regarding plaintiff's use of his hands find no support in his own records because he was not treating plaintiff for his hands. Nor does Dr. Lester set forth support for these opinions in his medical source statement. As an explanation for these opinions, he simply stated: "Pain is moderate to severe at times. He has to get off his feet frequently." Tr. 328. There is no explanation of how plaintiff's needing to get off his feet frequently accounts for his purported manipulative limitations. The medical evidence of record does not otherwise show that plaintiff had limitations on use of his hands. Dr. Lester's opinions on plaintiff's use of his hands are therefore not well supported by medically accepted clinical and laboratory diagnostic techniques, as required for them to be given controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In addition, as the ALJ notes, these opinions are contradicted by the opinion of Dr. Land that plaintiff could use his hands. Specifically, Dr. Land found that plaintiff "shows no restriction in his ability to use his hands above the head or use of his fingers to do fine finger movements." Tr. 336. This determination is based on his specific examination findings in his report:

> There is full passive range of motion of the . . . wrists, and finger joints.
>  . . . .
> Muscle strength testing was 5/5 at the grips . . . . The patient was able to oppose the tips of the thumbs to the tips of the fingers on both hands. He could pick up a flat object from a level surface with both hands without difficulty.

Tr. 335.

In addition, state agency nonexamining consulting physician Dr. Woods found in his physical RFC assessments that plaintiff did not have any manipulative limitations. Tr. 134-35, 156-57.

The evidence developed by Dr. Land regarding plaintiff's use of his hands and the assessments by Dr. Woods constitute substantial evidence inconsistent with Dr. Lester's opinions regarding plaintiff's use of his hands. The absence of any such inconsistent evidence would, of course, be necessary for Dr. Lester's opinions on plaintiff's hand use to be given controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The ALJ's statement that Dr. Lester restricted plaintiff to less than a full 8-hour workday is ostensibly based on his finding that plaintiff can stand and/or walk "less than 2 hours in an 8-hour workday" and sit for "less than about 6 hours i[n] an 8-hour workday." Tr. 327. Although the form Dr. Lester used directed that "[i]f less than [two] hours selected provide explanation of the precise limitation opined," Dr. Lester did not do so.

23

Notably, the difference between Dr. Lester's findings and the limitations in the ALJ's RFC determination is not necessarily substantial. The ALJ found plaintiff could stand and/or walk "up to two hours" in an eight-hour workday. Tr. 13-14 ¶ 5. Since Dr. Lester did not specify how much shorter than two hours plaintiff could stand and/or walk, his selection could signify that plaintiff could stand and/or walk for even a minute less than two hours. The form Dr. Lester used did not give as an option a two-hour limit on standing and/or walking, the limit the ALJ specified. The next option up from the one Dr. Lester selected was for "at least 2 hours" in an 8-hour workday, which could entail more than 2 hours. Tr. 327.

Similarly, the ALJ found that plaintiff could sit for "up to six hours" in an eight-hour workday. Tr. 13 ¶ 5. Dr. Lester's finding of "less than *about* six hours" in an eight-hour workday could signify that plaintiff could sit for even one minute less than six hours.

Particularly in light of this potentially small difference in the findings between Dr. Lester and the ALJ, the ALJ did not err in not giving controlling weight and assigning only little weight to Dr. Lester's opinion that plaintiff is unable to work a full eight-hour workday. As the ALJ found, the conservative pain management program Dr. Lester provided plaintiff as documented in Dr. Lester's treatment notes "would not indicate a person who is restricted as Dr. Lester has described" in his medical source statement. Tr. 16 ¶ 5. Dr. Lester did not provide findings in support of his determinations other than citing plaintiff's diagnoses of "right knee arthritis and ruptured patella tendon." Tr. 327. Needless to say, these diagnoses do not themselves substantiate the severe limitations Dr. Lester found. *See Gross*, 785 F.2d at 1166.

The report of consulting examining physician Dr. Land also does not, of course, show limitations supporting the inability of plaintiff to work an eight-hour workday. In addition, state agency nonexamining consulting physician Dr. Woods found plaintiff capable of working an

24

eight-hour workday, albeit at the medium exertional level subject to various limitations. The record thus supports the conclusion that Dr. Lester's opinion that plaintiff cannot work an eight-hour workday is not well supported by medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

A comparable analysis applies to Dr. Lester's opinion that plaintiff can occasionally lift "less than 10 pounds" (Tr. 326), as opposed to a full 10 pounds, the maximum weight the ALJ found plaintiff capable of lifting (Tr. 14 ¶ 5). The difference between the capacity for a full 10 pounds and "less than 10 pounds" could obviously be minimal. *See* Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *7-8 (2 July 1996) (providing that the ability to lift or carry "slightly less than 10 pounds" itself would not significantly erode the unskilled sedentary occupational base). Neither the treatment notes of Dr. Lester, his medical source statement, Dr. Land's report, or Dr. Woods' physical RFC assessments substantiate that Dr. Lester's opinion on plaintiff's lifting capacity is well supported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ therefore did not err in not giving this opinion controlling weight, but instead little weight.

Dr. Lester found plaintiff to have the postural limitations of only occasional climbing (of ramps, stairs, ladders, ropes, and scaffolds), balancing, keeling, crawling, and stooping; the environmental limitation of "limited" exposure to humidity and wetness; and the exertional limitation of "limited" pushing and/or pulling with the lower extremities. Tr. 327, 329. The same lack of supporting evidence for the limitation Dr. Lester found in plaintiff's ability to stand and walk arguably applies to his ability to push and pull with the lower extremities. In addition, there is scant, if any, support in the record for the environmental limitation Dr. Lester imposed. He does not explain the basis for it in his medical source statement, it is not apparent from his

treatment notes, and the other medical evidence does not support it, including Dr. Woods' physical RFC assessments, which found no limitation as to wetness or humidity. *See* Tr. 135, 157. There is, however, evidence supporting the postural limitations found by Dr. Lester, including most notably Dr. Land's report and Dr. Woods' physical RFC assessments, the latter finding plaintiff limited to occasional climbing of ladders, ropes, and scaffolds; occasional kneeling; and occasional crawling (Tr. 134, 156).

Nonetheless, as the ALJ recognized, she accommodated the postural limitations by restricting plaintiff to sedentary work since "[s]uch postural activities would not be required at the sedentary exertional level." Tr. 16 ¶ 5; *see* Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *7-8 (providing that limitation to occasional climbing, balancing, keeling, and crawling, does not usually erode the occupational base for a full range of unskilled sedentary work and that limitation to occasional stooping only minimally erodes such occupational base). She made such accommodation, of course, in response to the determination by Dr. Land that plaintiff had postural limitations, giving his report great weight, rather than the determination by Dr. Lester. *See* Tr. 16 ¶ 5. The ALJ's restriction of plaintiff to sedentary work also accommodated the limitations Dr. Lester found in pushing and/or pulling, and exposure to humidity and wetness. *See* Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *6, 8. The specific occupations that the ALJ found were available to plaintiff do not require the postural activities as to which Dr. Lester found plaintiff limited or exposure to humidity or wetness. *See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"), entries for surveillance-system monitor (DOT No. 379.367-010), call-out operator (DOT No. 237.367-014),

and order clerk, food and beverage (DOT No. 209.567-014) (U.S. Dep't of Labor 1993), https://www.nosscr.org/sco/sco-ocr.pdf.[10]

Thus, the ALJ's handling of the postural, environmental, and pushing and/or pulling limitations found by Dr. Lester is tantamount to their having been given controlling weight. The ALJ restricted plaintiff to an exertional level and found occupations available to him in which he would not have to engage in the activities or be exposed to the environmental conditions in question. In this sense, the issue of attribution of controlling weight to these limitations is ultimately moot. The ALJ therefore committed no error with respect to the weight she accorded these limitations found by Dr. Lester.

There is also no error in the ALJ's assessment of the opinions of Dr. Land. In his report of 12 April 2012, Dr. Land opined as follows:

> The patient will be severely restricted in his ability to squat, stoop, climb, and balance due to his right knee injury and his obesity. He shows no restriction in his ability to use his hands above the head or use of his fingers to do fine finger movements.

Tr. 336. As noted, the ALJ stated expressly that she gave his opinion on postural limitations great weight:

> Dr. Land has provided an examining source statement indicating that the claimant would be severely restricted in his ability to squat, stoop, climb, and balance (Exhibits B-2F). Since this assessment was based on the consultant's own clinical examination of the claimant, the Administrative Law Judge gives great weight to this opinion. The limitations articulated here have been incorporated in the [RFC] assessment. Such postural activities would not be required at the sedentary exertional level.

Tr. 16 ¶ 5.

As previously discussed, while the opinions of treating sources are generally entitled to greater weight than those of nontreating examining sources, the opinions of nontreating

---

[10] The SCO does not list separately the demands of particular occupations for pushing and pulling, which are instead included in the broader activity of strength. *See* SCO, app. C at C-1 to C-2.

examining sources can be given greater weight under appropriate circumstances. *See, e.g., Mastro,* 270 F.3d at 178. Plaintiff's apparent contention that there is a blanket prohibition against an ALJ from doing so is meritless.

The examination findings by Dr. Land in his report provide substantial evidence supporting the ALJ's attribution of great weight to Dr. Land's opinion on plaintiff's postural limitations. In any event, the ALJ's restriction of plaintiff to sedentary work moots the propriety of the ALJ's assessment for the reasons previously discussed: the sedentary work restriction accommodates limitations plaintiff claims he has.

Although the ALJ does not expressly characterize the weight she gave the opinion of Dr. Land on plaintiff's manipulative capacity, it is apparent that she gave it significant weight. In discussing Dr. Lester's opinion that plaintiff has manipulative limitations, she states:

> [T]here is contradictory evidence from Dr. Land, an examining source. He found that the claimant could use his hands and that was supported by demonstration during his examination of the claimant.

Tr. 16 ¶ 5. The findings by Dr. Land cited by the ALJ provide substantial evidence supporting her attribution of significant weight to his opinion that plaintiff did not have limitations in his manipulative capacity. The ALJ's assessment also finds support in the paucity of other evidence substantiating any such limitations. For this and the other reasons stated, the court rejects plaintiff's challenge to the ALJ's assessment of Dr. Land's opinions.

## IV. ALJ'S RFC DETERMINATION

A claimant's RFC is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must be determined on the basis of all the relevant evidence of record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Plaintiff contends that the ALJ erred by not including her RFC determination the limitations Dr. Lester found plaintiff to have in his medical source statement. Plaintiff cites to the ALJ's statement at the hearing that the less than sedentary level at which Dr. Lester placed plaintiff would render him disabled under Social Security law (without need for testimony from a vocational expert). Tr. 46. As previously discussed, though, the ALJ properly assigned Dr. Lester's opinions little weight.

Plaintiff points to his own testimony in support of the limitations found by Dr. Lester. As summarized by the ALJ, he testified in part:

The claimant said that he had aching in the right leg. It would feel shivering and he got a real sharp pain. He had to keep the leg elevated and he would put ice on it. He also took medication. He elevated his leg for 45 minutes to an hour and he iced it about four times a day. His left knee also hurt.

The claimant said that he could only stand for 30 minutes or less and then his leg would start swelling up. He could walk for 30-45 minutes. He could sit for 30-35 minutes. He was not able to squat. He said that he used a stick or cane around the house. He had to take steps one at a time. He said that he had a lot of steps at his house. He could bend a little bit, but had to hold on to something.

On a typical day, the claimant would get up and take a bath. He would go to the mailbox. His wife did the cooking and cleaning. Mostly, he would sit around and watch television. He kept his leg elevated off and on. He spent most of his time in the sitting room. His bedroom was on the lower level. Both the back and front doors had steps. They had rails and he would put his hands on the rails to walk down.

Tr. 14-15 ¶ 5.

The ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." Tr. 15 ¶ 5. The ALJ explained as follows:

The claimant's acute patellar tendon rupture was corrected by surgery. He has developed arthritis in the right knee joint and he also has signs of arthritis in the

29

left knee joint. He has slight limitation of motion of the right knee and he has crepitus on motion of both knees. He has a full range of motion of the left knee. He does not have any signs of persistent joint inflammation and he is fully weight-bearing, albeit with a limp. His physician has not recommended further surgery and the claimant has not required referral for treatment in a pain management program. This indicates that his joint pain is not intractable. In addition, the medical evidence and observations by the Administrative Law Judge do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. The claimant's allegations of functional restrictions are generally credible, but they are not determinative regarding the issue of disability. His limitations can be accommodated within a work environment.

Tr. 15-16 ¶ 5.

Plaintiff does not directly challenge the ALJ's credibility analysis. The court finds that it conforms to applicable legal standards and is supported by substantial evidence, including the evidence she cites. *See Craig*, 76 F.3d at 593-96; 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *1n. 1, *2 (2 July 1996).

Notably, of course, the ALJ did not simply disregard Dr. Lester's opinions or plaintiff's testimony, but included responsive limitations in her RFC determination, including restriction to sedentary work; the option to switch position between sitting and standing every 30 minutes; and the need to elevate his legs during regularly scheduled breaks. *See* Tr. 13-14 ¶ 5.

The court concludes that the ALJ's RFC determination is supported by substantial evidence and based on proper legal standards. The court accordingly rejects plaintiff's challenge to the ALJ's RFC determination.

## **CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion (D.E. 26) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 22) for

30

judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 16 August 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 2nd day of August 2016.

James E. Gates
United States Magistrate Judge